**RAWLEIGH, MOSES & COMPANY, INC., a corporation, Plaintiff,**

v.

**Herbert MARTIN, Jr. and William Leo McNeil, Defendants.**

**No. 73 C 188(2).**

United States District Court, E. D. Missouri, E. D.

April 30, 1974.

David K. Breed, St. Louis, Mo., for plaintiff.

George E. Murray, St. Charles, Mo., for defendants.

### MEMORANDUM AND ORDER

REGAN, District Judge.

This is an action against defendants, citizens of Missouri, as guarantors of a factoring agreement between Imperial Industries, Inc., a Mississippi corporation engaged in the manufacture and sale of carpet padding, and Rawleigh, Moses & Co., Inc. (Factor), a Delaware corpora-

tion having the same name and state of incorporation as plaintiff. Plaintiff's principal and only place of business is in Chicago, Illinois, so that there is diversity of citizenship.

By way of background: The factoring agreement was entered into in 1966, and until 1969 was guaranteed by persons other than defendants. For convenience, Factor assigned account number 722 for its transactions with Imperial. In May, 1969, the guarantors terminated their guaranty, and Factor set up another account, number 723, to enter transactions not subject to that guaranty.

By May, 1969, Imperial was in deep financial trouble (having a negative net worth of $300,000) and had virtually ceased operations. Some of its major creditors approached defendants, who had expertise in the production of carpet padding, for the purpose of inducing them to accept employment by Imperial, take charge of its production and sales, and, hopefully, salvage the company. At a meeting held in Imperial's office on June 20, 1969, attended by defendants and representatives of the creditors, including Robert Brew, a vice president of Factor, these creditors agreed to lend to Imperial the aggregate sum of $75,000 for working capital, with Factor to continue the existing factoring arrangement. Initially, the entire $75,000 was to be advanced by Factor, $25,000 on its own account and $50,000 for the other two creditors. Only Factor's personal advance of $25,000 is involved in this action.

At the June 20 meeting, defendants were requested to guarantee factoring transactions thereafter occurring as a result of their management. Because of questions raised concerning whether the guaranty as worded might make defendants liable for past transactions, Brew agreed to clarify the agreement and for that purpose typed at the top thereof the words "This guaranty relates to factoring agreement between Rawleigh, Moses & Co., Inc. and Imperial Industries, Inc., Batesville, Mississippi, from this date forward."

The document as so worded was executed June 23, 1969 and defendants entered the employ of Imperial. Factoring transactions thereafter were recorded in Account No. 723. No new account number was assigned to record transactions to which defendants were a party. The $25,000 loan by Factor was received for the account of Imperial on July 2, 1969. Factor subsequently reimbursed itself for the amount of the loan by crediting it against Imperial's Account No. 722 reserve under the factoring agreement. The result was an ultimate deficiency in the Account No. 722 reserve.

The balance shown on the records of Account No. 723 as of time of trial was $4,365.57, but by reason of an improper debit of $123.70, the actual amount was $4,241.87. This figure does not allow credit for a recovery of $3,000.00 against M & R Plastics Company, nor does it take in account the sum of $7,549.00, the net amount received from James B. Lollar who was a party to and was sued in Mississippi on the same guaranty here involved. Hence, unless defendants are liable for the $25,000.00 loan to Imperial or unless their guaranty extends to the factoring transactions involved in Account No. 722, defendants would not be liable to Factor under this guaranty.

It is quite clear that the guaranty executed by defendants covered only transactions after the date of the guaranty. The statement which precedes the guaranty itself expressly states that the guaranty relates to the factoring agreement "from this date forward." In addition, the testimony concerning the circumstances under which the guaranty was executed confirms the plain meaning of the language employed. That evidence does not vary the terms of the instrument thereafter executed, as plaintiff contends, but instead explains and gives insight to the intention of the parties.

The guaranty did not extend to Account No. 722 which involved past transactions, and there is no basis for holding defendants liable with respect to any

balance in that account. Plaintiff urges, however, that insofar as the $25,000 loan is concerned defendants are liable therefor inasmuch as the money was received to the credit of Imperial on July 2, 1969, subsequent to the date of the June 23, 1969 guaranty. This for the reason that although the parties were in agreement that the guaranty was to cover only *factoring* transactions in connection with defendants' operations, the actual wording is broad, in that it purports to include a guaranty that Imperial would pay all moneys agreed to be paid "under any and all *other* agreements, express or implied, and including any and all moneys due and owing to Factor upon open account or represented by or payable under instruments purchased by Factor under said agreement."

Whatever may be the proper construction of the foregoing quoted language, the fact is that Factor, through its vice-president Robert Brew, agreed on June 20, 1969, to make the $25,000 operating capital loan and that this agreement was made prior to the execution of the guaranty. There can be no doubt but that the making of the loans whereby Imperial would have $75,000 operating capital available was a condition precedent to defendants' accepting employment with Imperial and guarantying future factor transactions. That the $25,000 was not actually received by Imperial until July 2 does not operate to create liability under the guaranty, limited as it is to transactions "from this date forward," in light of Factor's *earlier* commitment and obligation to make the payment.

The recovery sought by plaintiff under its view of the facts is $24,804.91. This sum is arrived at by including the $25,000 loan as part of the guaranty obligation. It follows from our finding adverse to plaintiff on this issue that plaintiff is not entitled to recover against defendants.

This disposition makes it unnecessary to definitively rule the now mooted motions for summary judgment and defendants' further contention that plaintiff has no right to recover in any event, for the reason that plaintiff's own evidence clearly shows that the factoring agreement and guaranty were made with the *former* Delaware corporation of the same name and *not* with plaintiff as it has alleged. So, too, the agreement for the $25,000 loan was made by the *former* Delaware corporation as was the payment thereof. The facts relating to plaintiff's relationship to its claim against defendants were well known to plaintiff long prior to the filing of this suit, and it is evident that plaintiff made its false allegations knowingly and advisedly and not inadvertently. And even in its proposed Findings of Fact, plaintiff persists in ignoring the true facts on this issue, namely that the former Delaware corporation of the same name and not plaintiff was the contracting party.

The foregoing memorandum constitutes our findings of fact and conclusions of law. The Clerk is directed to enter judgment in favor of defendants and against plaintiff.